**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| PHILLIP LITCHFIELD, individually and on behalf of all others similarly situated,<br><br>      *Plaintiff*,<br><br>v.<br><br>EXAMSOFT WORLDWIDE, INC., a Florida corporation,<br><br>      *Defendant*. | Case No. 1:14-cv-5971 |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Phillip Litchfield brings this Class Action Complaint and Demand for Jury Trial against Defendant ExamSoft Worldwide, Inc. to obtain redress for its deceptive marketing and sale of its SofTest software product. Plaintiff, for his Class Action Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.      Defendant ExamSoft is the leading provider of bar exam software for nearly 90% of states nationwide. For fees upwards of $100, ExamSoft claims that its SofTest program helps "[t]ake some of the stress and fatigue out of exam day." However, as thousands of individuals learned on the first day of the bar exam on July 19, 2014 ("Exam Day"), this statement could not have been farther from the truth.

2.      Instead, when applicants completed their written portion of the exam and tried to upload their responses to the exam (as instructed through ExamSoft's system), they were met with error messages, contradicting confirmation/failure emails, and a complete inability to verify whether their exams were submitted before state mandated deadlines.

3.     The total collapse of the ExamSoft upload system (including its upload servers, website, and phone system) stemmed from its wholly insufficient infrastructure that was unable to process the thousands of bar exam results in real time. This failure occurred despite the fact that ExamSoft knew well in advance of Exam Day *exactly* how many applicants had registered and paid to use the SofTest program. Armed with this knowledge, ExamSoft could have upgraded and fortified its system to handle the anticipated inundation of exam responses. Unfortunately for those taking the bar—already under devastating pressure—ExamSoft chose not to adequately prepare its system and let its paying customers suffer the consequences.

4.     Plaintiff Phillip Litchfield and the Class paid Defendant for a product that had a single purpose: submitting bar exam responses in a timely and reliable manner. That product woefully underperformed any reasonable expectation of its performance, thereby causing Plaintiff and the Class significant emotional distress and depriving Plaintiff and the Class of a significant portion of the value of the product they paid for. In response, Plaintiff, on behalf of himself and the Class, filed the instant lawsuit seeking actual damages together with costs and reasonable attorneys' fees.

## PARTIES

5.     Plaintiff Phillip Litchfield is a natural person and citizen of the State of Illinois.

6.     Defendant ExamSoft Worldwide, Inc. is a corporation existing under the laws of the State of Florida with its principal place of business located at 6400 Congress Avenue, Suite 1050, Boca Raton, Florida 33487. Defendant regularly conducts business throughout this District, the State of Illinois, and the United States.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2),

because (i) at least one member of the Class is a citizen of a different state than Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to this action.

8.     The Court has personal jurisdiction over Defendant and venue is proper in this District because the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from Illinois, and because Defendant transacts significant amounts of business within this District and enters into consumer and business contracts here.

## COMMON FACTUAL ALLEGATIONS

9.     Defendant ExamSoft is the leading developer and distributor of exam management software (*i.e.*, software used to administer examinations over the Internet). ExamSoft is best-known for its SofTest product, which is the software program used by over 43 State Supreme Courts to electronically deliver the bar exam to applicants (typically at a cost to the applicant between $100 to $150).

10.     On July 29, 2014, tens of thousand of individuals—including Plaintiff—took the written portion of the bar exam using SofTest.

11.     Unfortunately, after a full day of testing, the stress had just begun: Plaintiff and the Class were unable to submit their exam answers—some for more than twenty-four hours—because of deficiencies with the SofTest product and ExamSoft's servers.

12.     For many applicants, SofTest froze and crashed after attempting to submit their written responses to the exam. Other applicants were initially able to submit their written responses, but later received emails from ExamSoft informing them that their submissions actually failed. And still others couldn't upload answers at all. Seeking to troubleshoot these issues, many applicants attempted to visit ExamSoft's website—where they were instructed to

3

visit to verify that their answers had successfully uploaded—but it unfortunately crashed and

remained down for much of the night on Exam Day. Not surprisingly, ExamSoft's technical

support phone line was so overloaded with calls that it simply disconnected those attempting to

call in.

13.     Only late in the night—or for some applicants, the following day during the

second day of the bar exam—were applicants ultimately able to successfully submit their exam

responses. This was especially problematic because many states had early evening deadlines for

exam submission, and many test takers were unable to submit their exam responses before their

state's submission deadline (leaving them to believe they had failed). While most states

ultimately extended the submission deadline by approximately twenty-four hours, notice of these

extensions did not come until late into the evening on Exam Day.

14.     Not surprisingly, ExamSoft's unscrupulous practices led to significant backlash

from applicants and even made the news. For instance, one applicant wrote:

> "Students paid $100 for this horrible software, and as result, we
> got heartache, stress, anxiety, and pain . . . It was an absolute
> nightmare. Instead of detoxing and preparing for the MBE [*i.e.,* the
> Multistate Bar Examination] the following day, I was up until 1:00
> a.m. trying and praying for my exam to go through. When I finally
> did get to bed, I barely got 2 hours rest because I had to be up at
> 5:00 a.m. to start day two of the bar. Examsoft hasn't even
> published an apology. Each student paid $100 for this nonsense,
> and I'm sure they made a handsome profit. Quite frankly, it's
> disgusting."[1]

Another wrote:

> "Total disaster for many bar examinees today. We were all told to
> go home and upload our files or we would get a [bar score of] zero.
> Software crashed. Website crashed. Tech support phone number

---

[1]     *Dear ExamSoft: Please Give Kids Their Money Back Before The Internet Murders You «
Above the Law: A Legal Web Site*, http://abovethelaw.com /2014/07/dear-examsoft-please-give-
kids-their-money-back-before-the-internet-murders-you/ (last visited Aug. 3, 2014).

disconnects you when you call for help. And we were forced to pay for the privilege of using this [software]."[2]

Yet another wrote:

"For the Utah bar exam we had to pay $150 to use a software called ExamSoft. We wrote our essays and MPTs [*i.e.*, the Multistate Performance Test] on it and then they told us we had to upload our answers when we got home. They said to get it done by 10 p.m. or we would receive 0s. Now that everyone is home and trying to get their answers in, the server is overloaded and can't handle it."[3]

15.     Ultimately, ExamSoft failed to maintain the necessary system infrastructure and capacity to adequately deliver the bar exam to the tens of thousands of applicants who registered and paid for the SofTest program. In other words, ExamSoft was fully aware of the expected deluge of applicants using the program, and yet, failed to take the commercially reasonable and necessary steps to increase its system capacity to ensure that its SofTest product actually performed as anticipated. In the end, SofTest failed to deliver a product that's sole purpose was to allow applicants to easily and reliably submit their bar exam responses.

### FACTS SPECIFIC TO PLAINTIFF LITCHFIELD

16.     Plaintiff Litchfield paid ExamSoft $100 to download and use SofTest to take the written portion of the Illinois State bar exam.

17.     Plaintiff Litchfield took the first day portion of the Illinois State bar exam on July 29, 2014.

18.     When Plaintiff Litchfield attempted to submit his bar exam responses, SofTest froze and then crashed. Though he was ultimately able to submit his responses, Plaintiff

---

[2]     *The Biggest Bar Exam Disaster Ever? ExamSoft Makes Everyone's Life Hard « Above the Law: A Legal Web Site*, http://abovethelaw.com/2014/07/bar-exam-disaster-examsoft-makes-everyones-life-hard/ (last visited Aug. 3, 2014).

[3]     *Id.*

Litchfield received several emails from ExamSoft with conflicting messages: some indicating that his exam had been successfully submitted, while others indicated that his submission attempt had, in fact, failed.

19.    Unclear on how to interpret the conflicting emails from ExamSoft, Plaintiff Litchfield attempted to access ExamSoft's website to learn more about the situation. Unfortunately, ExamSoft's website also crashed on Exam Day and Plaintiff Litchfield was therefore unable to glean any further information from ExamSoft. For Plaintiff Litchfield, the most stressful part of the first day of the bar exam was not knowing—for hours—whether or not he had successfully submitted his exam before the deadline.

20.    ExamSoft's failure to adequately allocate server space resulted in SofTest's failure on Exam Day and caused Plaintiff Litchfield extreme emotional distress and monetary damage. For Illinois test takers, ExamSoft's website stated:

> "All laptop testers have until 2:00am to gain access to an
> internet connection at some other location and upload their
> answer files. NO exceptions will be made to this
> requirement. If you fail to upload your answer files by the
> 2:00 am deadline, you will receive a score of "0" for every
> missing IEE, MPT and MEE answer."[4]

21.    Because Plaintiff Litchfield could not determine whether his bar exam answer was "auto-uploaded" by ExamSoft's SofTest before the imposed deadline, Plaintiff suffered stress, anxiety, and emotional distress, and was damaged in that he did not receive the actual value he paid for the SofTest product.

22.    Plaintiff Litchfield also reasonably relied upon ExamSoft's omissions regarding SofTest's utility and functionality—that is, that SofTest would not allow Plaintiff Litchfield to

---

[4]    *Illinois Board of Admissions to the Bar*, https://ei.examsoft.com/GKWeb/login/ilbar (last visited Aug. 3, 2014).

submit his bar exam responses in a timely manner upon finishing the exam. But for these

omissions, Plaintiff Litchfield would have not paid ExamSoft $100 to use SofTest and would

have instead opted to write and submit his exam responses by hand.

## CLASS ALLEGATIONS

23.     **Class Definition**: Plaintiff Litchfield brings this action pursuant to Federal Rule

of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a Class and Subclass defined

as follows:

> **Class**: All individuals in the United States who (1) took the bar exam on July 29,
> 2014; and (2) who paid to use ExamSoft's SofTest product to submit their bar
> exam responses.

> **Illinois Subclass**: All individuals in the Class who are domiciled in the State of
> Illinois.

Excluded from the Class and Illinois Subclass are (1) Defendant, Defendant's agents,

subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or

its parents have a controlling interest and its current and former employees, officers, and

directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's

or Magistrate Judge's immediate family, (3) persons who execute and file a timely

request for exclusion, (4) the legal representatives, successors, or assigns of any such

excluded person; and (5) Plaintiff's counsel and Defendant's counsel.

24.     **Numerosity**: The exact sizes of the Class and Subclass are unknown and not

available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On

information and belief, approximately sixty thousand individuals took the bar exam on July 29,

2014. Members of the Class and Subclass can be identified through Defendant's records.

25.     **Commonality and Predominance**: There are many questions of law and fact

common to the claims of Plaintiff and the Class and Subclass, and those questions predominate

over any questions that may affect individual members of the Class and Subclass. Common

questions for the Class and Subclass include, but are not necessarily limited to the following:

(a)     whether Defendant's conduct violated the Illinois Consumer Fraud and

Deceptive Business Practices Act;

(b)     whether Defendant's conduct constitutes gross negligence;

(c)     whether Defendant's conduct constitutes a breach of contract; and

(d)     whether Defendant's conduct constitutes unjust enrichment.

26.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the

Class and Subclass, in that Plaintiff and the members of the Class and Subclass sustained

damages arising out of Defendant's uniform wrongful conduct.

27.     **Adequate Representation**: Plaintiff will fairly and adequately represent and

protect the interests of the Class and Subclass, and Plaintiff has retained counsel competent and

experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Class

or Subclass, and Defendant has no defenses unique to Plaintiff.

28.     **Policies Generally Applicable to the Class and Subclass**: This class action is

appropriate for certification because Defendant has acted or refused to act on grounds generally

applicable to the Class and Subclass as a whole, thereby requiring the Court's imposition of

uniform relief to ensure compatible standards of conduct toward the members of the Class and

Subclass, and making final injunctive relief appropriate with respect to the Class and Subclass as

a whole. Defendant's policies challenged herein apply and affect members of the Class and

Subclass uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct

with respect to the Class and Subclass as a whole, not on facts or law applicable only to Plaintiff.

Plaintiff and the members of the Class and Subclass have suffered harm and damages as a result

of Defendant's unlawful and wrongful conduct.

29.    **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class and Subclass will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class and Subclass to obtain effective relief from Defendant's misconduct. Even if members of the Class and Subclass could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to the parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

<u>**FIRST CAUSE OF ACTION**</u>
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 ILCS §§ 505/1, *et seq.*)**
**(On Behalf of Plaintiff and the Illinois Subclass)**

30.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

31.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (815 ILCS §§ 505/1, *et seq.*) protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

32.    The ICFA prohibits any unlawful, unfair, or fraudulent business acts or practices including the employment of any deception, fraud, false pretense, false promise, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact.

9

33.     The ICFA applies to Defendant's actions and conduct as described herein because it protects consumers in transactions that are intended to result, or which have resulted, in the sale of goods or services.

34.     Defendant is a "person" as defined under section 505/1(c) of the ICFA.

35.     Plaintiff and each member of the Subclass are "consumers" as defined under section 505/1(e) of the ICFA.

36.     The SofTest program is "merchandise" within the meaning of section 505/1(b) and its sale is considered "trade" or "commerce" under the ICFA.

37.     Defendant violated the ICFA by omitting the fact that the SofTest program would not allow consumers—including Plaintiff and the Subclass—to upload their responses in a timely and reliable manner. Defendant intended that Plaintiff and the Subclass rely on its omissions.

38.     ExamSoft's ability to reliably and timely upload exam responses was a material selling point of the SofTest program, and a primary reason to purchase Defendant's products over other alternatives (such as choosing to hand write exam responses). Plaintiff and members of the Subclass relied on Defendant's omissions about the ability of the SofTest program to upload exam results in a timely and efficient manner purchasing and using the SofTest product.

39.     Had Plaintiff and the Subclass known of Defendant's inability to upload their exam results in a timely and reliable manner, they would not have purchased the SofTest program.

40.     By omitting the fact that its product would not act in a reliable and predictable manner in uploading exam results, Defendant violated section 510/2(a) of the ICFA.

41.     Based upon Defendant's omissions described herein, Plaintiff and the Subclass reasonably expected that the SofTest program would reliably and timely upload their exam

results. These are reasonable and objective consumer expectations based upon the circumstances. It is equally reasonable for a consumer to believe that ExamSoft would design and maintain its internal systems in a commercially reasonable manner that would appropriately handle the demand of Exam Day and adequately process exam responses.

42.     Plaintiff and the Subclass reasonably relied upon Defendant's omissions in paying to purchase Defendant's SofTest program and using it on Exam Day.

43.     Defendant's omissions regarding SofTest's ability to reliably and timely upload exam results was an act likely to mislead Plaintiff and the members of the Subclass acting reasonably under the circumstances, and constitutes an unfair and deceptive trade practice in violation of the ICFA.

44.     Defendant knew or should have known that it had kept highly relevant and material information—namely, information regarding how ill-prepared for Exam Day the SofTest product was—from its customers, and therefore violated the ICFA.

45.     As a direct and proximate result of Defendant's violation of the ICFA, Plaintiff and each Subclass member have suffered harm in the form of monies paid to Defendant. Plaintiff, on behalf of himself and the Class, seeks an order (1) requiring Defendant to cease the unfair practices described herein; (2) awarding damages, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable; and/or (3) requiring Defendant to restore to Plaintiff and each Subclass member any money acquired by means of unfair competition (restitution).

**SECOND CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

46.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

47.     Plaintiff and members of the Class paid Defendant to use its product to take the

written portion of the bar exam and to timely upload their exam responses.

48. By accepting payment from Plaintiff and members of the Class, Defendant assumed a duty to operate its product and its internal systems, including its website, servers, and other components necessary to timely upload Plaintiff and Class members' exam results, and to do so in a commercially reasonable manner with sufficient capacity to handle the foreseeable demand.

49. However, Defendant failed to maintain and operate its systems in a manner sufficient to provide Plaintiff and members of the Class with the ability to upload their exam results in a timely and reliable manner as promised. Instead, Defendant's upload process, website, phone lines, and servers collapsed when Plaintiff and Class members attempted to upload their exam results, and did not return to a complete functional level for approximately twenty-four hours.

50. By failing to operate and maintain its systems as described herein, Defendant's conduct was negligent and departed from all reasonable standards of care.

51. As a direct and proximate result of Defendant's failure to exercise reasonable care and sufficiently operate and maintain its systems, Defendant could not handle Plaintiff and Class members' attempts to upload their bar exam results and thereby failed to follow through on its representations and promises to timely and reliably upload exam results.

52. Defendant's system failure was reasonably foreseeable inasmuch as it was fully aware that tens of thousands of individuals nationwide would attempt to upload their exam results within a very small window of time because Plaintiff and the Class registered for and paid ExamSoft well in advance of Exam Day to use SofTest.

53. Neither Plaintiff nor the other members of the Class contributed to Defendant's

system failures.

54.	As a direct and proximate result of Defendant's negligence described herein, Plaintiff and the Class were injured because they suffered a substantial failure in their functional use of Defendant's product that they paid substantial money for, as well as stress, anxiety, and emotional distress.

## THIRD CAUSE OF ACTION
### Breach of Contract
### (On Behalf of Plaintiff and the Class)

55.	Plaintiff incorporates the foregoing allegations as if fully set forth herein.

56.	In order to download and use Defendant's SofTest product, Plaintiff and the Class entered into a contract whereby they would pay Defendant money and Defendant agreed to provide a product that would timely and reliably upload bar exam results.

57.	Defendant materially breached this contract by failing to provide a product that timely and reliably uploaded Plaintiff and Class members' bar exam results. Plaintiff and Class members fully performed their portion of the contract by paying Defendant the listed sale price for the SofTest program.

58.	As a direct and proximate result of Defendant's misconduct and breach of contract, Plaintiff and Class members suffered harm in the form of monies paid. Plaintiff and the Class members did not receive the benefit of the bargain for which they contracted and for which they paid money.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment
### (in the alternative to Breach of Contract)
### (On Behalf of Plaintiff and the Class)

59.	Plaintiff incorporates the foregoing allegations as if fully set forth herein, excluding paragraphs 55 through 58.

60.     Should the contract between Plaintiff and the Class on the one hand, and Defendant on the other, be found void or unenforceable, Plaintiff and members of the Class will have no adequate remedy at law.

61.     Defendant knowingly profited from the sale of its SofTest program to Plaintiff and Class members.

62.     Plaintiff and the Class conferred a benefit upon Defendant. Defendant received and retained money belonging to Plaintiff and the Class as a result of its unlawful conduct described herein.

63.     Defendant appreciates or has knowledge of the benefit conferred upon it by Plaintiff and the Class.

64.     Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and the Class that it unjustly received as a result of its unlawful conduct described herein.

65.     Plaintiff and the Class have suffered financial loss as a direct result of Defendant's unlawful conduct described herein.

66.     Plaintiff, on his own behalf and on behalf of the Class, seeks restitution of the proceeds Defendant received as a result of its unlawful conduct described herein, as well as attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Phillip Litchfield, individually and on behalf of the Class and Subclass, respectfully requests that this Court enter an Order:

1.     Certifying the Class and Subclass as defined above, appointing Plaintiff Phillip Litchfield as the representative of the Class and Subclass, and appointing his counsel as Class

Counsel;

2.   Declaring that Defendant's actions, as set out above, violate the ICFA, 815 ILCS §§ 505/1, *et seq.*;

3.   Awarding damages in an amount to be determined at trial;

4.   Awarding injunctive and other equitable relief as necessary to protect the interests of the Class and Subclass, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

5.   Awarding Plaintiff and the Class and Subclass their reasonable litigation expenses and attorneys' fees;

6.   Awarding Plaintiff and the Class and Subclass pre- and post-judgment interest, to the extent allowable, and

7.   Awarding such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**PHILLIP LITCHFIELD**, individually and on behalf of all others similarly situated,

Dated: August 4, 2014        By: /s/ Christopher L. Dore
                                      One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Benjamin H. Richman
brichman@edelson.com
Christopher L. Dore
cdore@edelson.com
Eve-Lynn Rapp
erapp@edelson.com

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378