**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| PHILLIP LITCHFIELD, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>EXAMSOFT WORLDWIDE, INC., a Florida corporation,<br><br>*Defendant.* | Case No. 1:14-cv-5971 |

**PLAINTIFF'S MOTION FOR AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION**

Plaintiff Phillip Litchfield, by and through his undersigned counsel, hereby respectfully

moves the Court for an Order certifying this case as a class action pursuant to Federal Rules of

Civil Procedure 23(a), (b)(2), and (b)(3), but requests that the Court enter and continue the

motion until after the completion of discovery on class-wide issues, at which time Plaintiff will

submit a more detailed memorandum of points and authorities in support of class certification.[1]

## I.     INTRODUCTION

Defendant ExamSoft Worldwide, Inc. ("ExamSoft") is the developer and distributor of a

software program called SofTest, which is the official bar exam software used across 43 state for

electronically saving and submitting bar exam responses. (*See* Plaintiff's Class Action Complaint

---

[1]      Plaintiff files this motion at the outset of litigation to prevent Defendant ExamSoft
Worldwide, Inc. from attempting a so-called "buy off" to moot his representative claims (*i.e.*,
tendering to him the full amount of his individual damages alleged in his Class Action Complaint
and Demand for Jury Trial). *See* Dkt. 1; *see also Damasco v. Clearwire Corp.*, 662 F.3d 891, 896
(7th Cir. 2011) ("Class-action plaintiffs can move to certify the class at the same time that they
file their complaint. The pendency of that motion protects a putative class from attempts to buy
off the named plaintiffs . . . If the parties have yet to fully develop the facts needed for
certification, then they can also ask the district court to delay its ruling to provide time for
additional discovery or investigation.").

and Demand for Jury Trial, Dkt. 1 ["Compl."] ¶ 9.) Bar examinees paid between $100 and $150 to use SofTest on July 29, 2014 ("Exam Day"), the date of the most recent administration of the bar exam. (*Id*.) Unfortunately, on Exam Day, ExamSoft's SofTest failed to perform its singular purpose of allowing examinees to reliably submit bar exam responses. (*Id*. ¶ 4.)

After a full day of testing on Exam Day, the stress had just begun for Plaintiff Litchfield and the proposed Class: Plaintiff and the Class were unable to submit their exam answers—some for more than 24 hours—because of deficiencies with the SofTest software and ExamSoft's servers. (*Id*. ¶ 11.) For many users, SofTest froze and crashed after SofTest attempted an "auto-upload" submission. (*Id*. ¶ 12.) Other users initially thought they were able to submit their answers but later received emails from ExamSoft indicating that their exam submission had failed. (*Id*.) And still others couldn't upload their answers at all. (*Id*.) Exacerbating the issue, ExamSoft's website crashed and remained down on Exam Day, and ExamSoft's technical support phone line was so overloaded that is simply disconnected users attempting to call in. (*Id*.) Only late in the evening—or, for some, the next day—were users ultimately able to successfully submit their exam responses. (*Id*. ¶ 13.)

Plaintiff is one such individual who paid ExamSoft $100 for the right to use ExamSoft on Exam Day, and who experienced problems with ExamSoft's SofTest software failing to perform. (*Id*. ¶¶ 16-22.) In light of Defendant's conduct, Plaintiff filed the instant lawsuit and now respectfully moves the Court for an Order certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiff's claims are readily certifiable because thousands of individuals (like Plaintiff) were subjected to Defendant's material omissions about the deficiencies with Defendant's SofTest software, website, and servers. (*Id*. ¶¶ 10, 15, 24.) Every member of the proposed Class paid Defendant for the right to use SofTest on exam day and then

2

suffered injury in a nearly identical manner (*i.e.*, damages in the form monies paid for a product that failed to perform as promised or even as could be reasonably expected to perform). (*Id.* ¶¶ 9, 10, 15.)

For these reasons, and as discussed further below, the proposed Class in this case meets each of the prerequisites for class certification under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), and the instant motion may be granted in its entirety. Nevertheless, Plaintiff respectfully requests that the Court enter and reserve ruling on the motion until after the completion of discovery on class wide issues, at which time Plaintiff will submit a fulsome memorandum of points and authorities in support of class certification.

## II.    FACTUAL BACKGROUND

### A.    Facts Applicable to All Members of the Putative Class

Defendant ExamSoft is the developer and distributor of SofTest, the software used by 43 State Supreme Courts for delivery of the Bar Exam. (*Id.* ¶ 9.) ExamSoft advertises that SofTest "take[s] some of the stress and fatigue out of [bar] exam day"—ostensibly because users may reliably submit exam answers from their computers immediately upon completion of the bar exam. (*Id.* ¶ 1.) Unfortunately, on July 29, 2014, SofTest failed to live up to ExamSoft's promises. (*Id.*) ExamSoft failed to maintain the necessary system infrastructure and capacity to handle the entirely foreseeable thousands of individuals who attempted to simultaneously submit exam responses via SofTest—despite knowing exactly how many bar takers downloaded SofTest, the precise submission deadlines for each state, and the "auto-upload" functionality of its own software. (*Id.* ¶ 15.) As a result, approximately sixty thousand members of the putative class who paid ExamSoft between $100 and $150 to use SofTest to submit bar exam responses were largely unable to do so. (*Id.* ¶¶ 9, 12.)

3

For most users, SofTest froze and crashed after SofTest attempted an "auto-upload" submission. (*Id.* ¶ 12.) For others, the SofTest software would initially indicate that it successfully submitted the answers but then ExamSoft would send an email shortly thereafter telling users the exact opposite—that the submission attempt had actually failed. (*Id.*)

Users attempting to determine whether their exam answers were successfully uploaded were previously instructed to check a webpage on www.examsoft.com. (*Id.*) However, the ExamSoft website was overwhelmed and inaccessible on Exam Day. (*Id.*) In short, ExamSoft's poor computer infrastructure was able to handle neither the thousands of exam takers attempting to upload responses nor the corresponding thousands of website visitors attempting to check ExamSoft's website for information regarding whether exam submissions were successful. (*Id.* ¶¶ 12, 15.) Making matters worse, users couldn't even call ExamSoft to discuss the problem: ExamSoft's technical support phone line was so overloaded that it simply disconnected users attempting to call in. (*Id.* ¶ 12.)

Only late in the night—or for some, users the next day—were users ultimately able to successfully submit their exam responses. (*Id.* ¶ 13.) This was especially problematic because many states had early evening deadlines for exam submission, and many test takers were unable to submit their exam responses before their state's submission deadline. (*Id.*) While most states ultimately extended the submission deadline by approximately twenty-four hours, notice of these extensions did not come until late into the evening on Exam Day. (*Id.*)

### B.    Facts Applicable to Plaintiff Litchfield

Plaintiff Litchfield is one of many individuals who paid ExamSoft $100 for the right to use SofTest to save and submit his answers to the bar exam on July 29, 2014. (*Id.* ¶¶ 16-17.) After Exam Day, Plaintiff Litchfield connected his laptop to a wireless network to allow SofTest

to initiate an "auto-upload" of his exam answers. After some time, SofTest indicated that his

answers were uploaded to ExamSoft's servers. (*Id.* ¶ 18.) However, Plaintiff Litchfield received

several emails from ExamSoft with conflicting messages: some indicated that his exam had been

successfully submitted, while others indicated that his submission attempt had in fact failed. (*Id.*)

Plaintiff Litchfield attempted to access ExamSoft's website to learn more about the situation and

to determine whether his answers were successfully uploaded. (*Id*. ¶ 19.) Unfortunately, Plaintiff

could not access ExamSoft's website because the website was unresponsive. (*Id.*) Thus, Plaintiff

Litchfield was unable to glean any clarifying information from ExamSoft on the true status of his

answers. (*Id.*)

ExamSoft's failure to adequately allocate server space resulted in SofTest's failure on

Exam Day and caused Plaintiff Litchfield extreme emotional distress. (*Id.* ¶ 21.) For Illinois test

takers, ExamSoft stated:

> All laptop testers have until 2:00am to gain access to an internet
> connection at some other location and upload their answer files.
> NO exceptions will be made to this requirement. If you fail to
> upload your answer files by the 2:00 am deadline, you will receive
> a score of "0" for every missing IEE, MPT and MEE answer."

(*Id.* ¶ 20.) Unfortunately, because Plaintiff Litchfield could not ascertain whether his bar exam

answer was "auto-uploaded" by ExamSoft's SofTest before the deadline, he suffered stress,

anxiety, and emotional distress, and was damaged in that he did not receive the actual value he

paid for the SofTest product. (*Id*. ¶ 21.)

Plaintiff Litchfield also reasonably relied upon ExamSoft's omissions regarding

SofTest's utility and functionality—namely, Defendant's failure to inform Plaintiff that SofTest

would not allow Plaintiff Litchfield to submit his bar exam responses in a timely manner upon

finishing the exam. (*Id.* ¶ 22.) But for these omissions, Plaintiff Litchfield would have not paid

ExamSoft $100 to use SofTest and would have opted to write and submit his exam responses by hand. (*Id*.)

### C.     The Proposed Class and Subclass

As a result of Defendant's conduct described above, Plaintiff brought this lawsuit and now seeks certification of a Class and Subclass, defined as follows:

> **Class:** All individuals in the United States who (1) took the bar exam on July 29, 2014; and (2) who paid to use ExamSoft's SofTest product to submit their bar exam responses.[2]

> **Illinois Subclass**: All individuals in the Class who are domiciled in the State of Illinois.

(Compl. ¶ 23.) As demonstrated below, the proposed Class meets each of the prerequisites for certification under Rule 23, and therefore the instant motion should be granted in its entirety.

### III.     THE PROPOSED CLASS SATISFIES EACH OF THE PREREQUISITES FOR CERTIFICATION

Class certification is appropriate under Rule 23 when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) has been satisfied. Fed. R. Civ. P. 23. Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law and fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and (iv) that both the named-representative and his or his counsel have and will continue to adequately

---

[2]     Excluded from the Class and Subclass are 1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current and former employees, officers, and directors, 2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, 3) persons who execute and file a timely request for exclusion, 4) the legal representatives, successors, or assigns of any such excluded person; and 5) Plaintiff's counsel and Defendant's counsel.

represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a).

In this case, Plaintiff seeks certification of the proposed Class under both Rule 23(b)(2) and 23(b)(3). In order to certify a class under Rule 23(b)(2), a plaintiff must show that the party opposing certification has acted or failed to act on grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate . . . ." Fed. R. Civ. P. 23(b)(2). Similarly, in order to certify a class under Rule 23(b)(3), there must be questions of law or fact common to the proposed class members, which predominate over any questions affecting only individual members, and the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

In determining whether to certify a proposed class, a court does not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). As such, "for purposes of considering a motion for class certification, the substantive allegations of the complaint are generally assumed to be true and it is also assumed that cognizable claims are stated." *Anderson v. Cornejo*, 199 F.R.D. 228, 237 (N.D. Ill. 2000). Thus, courts are required to analyze the allegations of the complaint and any evidence submitted by the parties with a presumption in favor of certification. *Id*.

As explained further below, the proposed Class in this case meets all of the requirements of Rules 23(a), (b)(2), and (b)(3), and therefore can be properly certified.

## A.    The Numerosity Requirement is Satisfied.

Rule 23(a)'s first requirement—numerosity—is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is no specific number required to satisfy numerosity, nor are plaintiffs required to state the exact number of potential

class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). Generally,

"[t]he court is permitted to make common-sense assumptions that support a finding of

numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, No. 03-cv-1995, 2004 WL 719278, at *2 (N.D.

Ill. 2004); *see also* 3 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* ¶ 7.20, 66

(4th ed. 2001).

Here, Plaintiff alleges—and discovery will show—that thousands of individuals

nationwide (and thousands in Illinois) paid ExamSoft $100 to $150 to use SofTest on Exam Day,

and that ExamSoft failed to operate SofTest in a commercially reasonable manner or as

advertised. (Compl. ¶¶ 9, 15); *see Heastie v. Comm. Bank of Greater Peoria*, 125 F.R.D. 669

(N.D. Ill. 1989) (classes numbering in the thousands "clearly" satisfy the numerosity

requirement); Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3:5, 243-46 (4th ed.

2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in

the hundreds, or thousands . . . In such cases, the impracticability of bringing all class members

before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

Accordingly, the proposed Class satisfies the numerosity requirement.[3]

### B.     The Commonality Requirement is Satisfied.

Next, Rule 23(a) requires that "there are questions of law or fact common to the class."

Fed. R. Civ. P. 23(a)(2). To meet this commonality requirement, the representative plaintiff must

demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores,*

*Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

147, 157 (1982)). In other words, commonality requires that the claims of the class "depend upon

a common contention . . . of such a nature that it is capable of classwide resolution—which

---

[3]     To the extent the Court requires additional details regarding the number of members in
the Class, such information may be readily obtained through discovery and Defendant's records.

means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Commonality is present where a "common nucleus of operative fact" exists, even if as to one question of law or fact, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), and is often found where "defendants have engaged in standardized conduct toward members of the proposed class." *Whitten v. ARS Nat'l Servs. Inc.*, No. 00-cv-6080, 2001 WL 1143238, at *3 (N.D. Ill. Sept. 27, 2001) (internal quotations omitted). Ultimately, commonality is a relatively low and easily surmountable hurdle. *Scholes v. Stone, McGure, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

In this case, all members of the proposed Class share common questions of both law and fact. The factual questions include: (1) whether Defendant accepted payment from Class members in exchange for a deficient product; and (2) whether Defendant should retain the payments provided to it by Plaintiff and the putative Class. These factual questions lead to common legal questions, including: (1) whether Defendant's conduct constitutes consumer fraud; (2) whether Defendant's conduct constitutes negligence; (3) whether Defendant's conduct constitutes a breach of contract; and (4) whether Defendant was unjustly enriched. (Compl. ¶ 25.)

Accordingly, the commonality requirement is met.

### C.     Plaintiff's Claims are Typical of the Class

Typicality, the next requirement under Rule 23, requires that Plaintiff's claims be typical of those of the other Class members. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to the commonality requirement and is satisfied if a plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and…are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*,

216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). Even the existence of factual differences will not preclude a finding of typicality; the claims of a named plaintiff need only share "the same essential characteristics" as those of the class. *Id.* Indeed, "[s]imilarity of legal theory is more important than factual similarity. . . ." *Id.* (quoting *Harris v. City of Chi.*, Nos. 96-cv-2406, 96-cv-7526, 1998 WL 59873, at *5 (N.D. Ill. Feb. 9, 1998)).

In this case, Plaintiff and the proposed Class members were all uniformly subject to Defendant's misconduct. That is, Plaintiff and the Class all paid Defendant for the right to use a piece of software that failed to perform to a commercially reasonable standard. (Compl. ¶15.) As a result of Defendant's misconduct, Plaintiff and the other members of the Class were damaged in nearly identical manner: they were all fraudulently deprived of the purported value of a purchased product. (*Id*. ¶¶ 4, 21.) As such, by pursuing his own claims, Plaintiff will necessarily advance the interests of the proposed Class in satisfaction of Rule 23(a)(3)'s typicality requirement.

**D.      The Adequacy of Representation Requirement is Satisfied.**

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor requires that both a proposed class representative and his or her counsel have the ability to "zealously represent and advocate on behalf of the class as a whole." *Maxwell*, 2004 WL 719278, at *5. The proposed class representative must not have claims that are "antagonistic or conflicting…with other members of the class," and must have a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.* (internal quotations omitted). Additionally, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by class claims. It is persuasive evidence that

10

proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

In this case, Plaintiff has the same interests as the proposed Class—recovering the money that Defendant accepted in exchange for the deficient software provided to Plaintiff and the proposed Class. (Compl. ¶¶ 9-15, 16-22.) Plaintiff has no interests antagonistic to those of the Class and therefore will fairly and adequately protect the interests of the Class. (*Id*. ¶ 27.) His pursuit of the instant action demonstrates as much. (*Id*.)

Similarly, proposed class counsel are well-respected members of the legal community who have extensive experience in class actions of similar size, scope, and complexity to the instant action. (*See* Declaration of Christopher L. Dore at ¶ 3 ["Dore Decl."] attached as Exhibit 1; *see* also Firm Resume of Edelson PC, attached to the Dore Decl. as Exhibit 1-A.) Proposed class counsel have regularly engaged in major complex litigation involving consumer technology issues, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. (Dore Decl. ¶ 3.) To date, proposed class counsel have also diligently investigated and dedicated substantial resources to the claims in this action, and they will continue to do so throughout its pendency. (*Id*. ¶ 4.)

As such, Plaintiff and his counsel have and will continue to adequately represent the Class, and Rule 23's adequacy requirement is met as well.

**E.      The Proposed Class Meets the Requirements of Rule 23(b)(2).**

Once the prerequisites of Rule 23(a) are satisfied, one of the three subsections of Rule 23(b) must be satisfied as well. Here, Plaintiff seeks certification of the proposed Class under Rules 23(b)(2) and (b)(3).

Rule 23(b)(2) provides that the party opposing certification must have acted or failed to

act on grounds generally applicable to the proposed class, "so that final injunctive relief or corresponding declaratory relief is appropriate. . . ." *Brown v. Yellow Transp., Inc.*, No. 08-cv-5908, 2011 WL 1838741, at *2 (N.D. Ill. 2011) (quoting Fed. R. Civ. P. 23(b)(2)). The requirement that the defendant act on grounds generally applicable to the 23(b)(2) class, like the whole of Rule 23, is to be liberally construed so as to favor the maintenance of class actions where appropriate. *See Yellow Transp.*, 2011 WL 1838741, at *2; *see also King v. Kansas City S. Indus.*, 519 F.2d 20, 26 (7th Cir. 1975)). Where a court finds that Rule 23(a)'s commonality requirement is met, the court should typically also find that the plaintiff has shown that the defendant acted on grounds generally applicable to the class as a whole. *See Lemon v. Intl. Union of Operating Eng'rs*, *Loc. No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000); *Yellow Transp.*, 2011 WL 183871, at *7.

Here, Defendant's misconduct was generally applicable to the Class as a whole. That is, Defendant failed to operate its servers—the only servers putative class members could have their answers uploaded to—and its SofTest software—the software uniformly provided to every member of the class—in a commercially reasonable manner. (Compl. ¶ 15.) Defendant also entered into virtually identical sales agreements with Plaintiff and members of the proposed Class by charging between $100 and $150 for the right to use SofTest (and by extension, ExamSoft's servers) on Exam Day. (*Id.* ¶ 9.) Unfortunately, ExamSoft's SofTest software and its servers did not perform to commercially reasonable standards—much to the detriment of Plaintiff and the Class. (*Id.* ¶ 15.) Defendant's conduct did not vary significantly from Class member to Class member and therefore, final declaratory relief is necessary for Plaintiff and the putative Class.

The requirements of Rule 23(b)(2) are satisfied.

12

**F.     The Proposed Class Also Meets the Requirements of Rule 23(b)(3)**

Plaintiff seeks certification of the Class under Rule 23(b)(3), which provides that a class

action may be maintained where the questions of law and fact common to members of the class

predominate over any questions affecting only individual members, and the class action

mechanism is superior to other available methods for the fair and efficient adjudication of the

controversy. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331–32

(N.D. Ill. 2006). As discussed below, this case readily meets both of these requirements.

i.     <u>Common Questions of Law and Fact Predominate</u>

Rule 23(b)(3)'s "predominance requirement looks to whether the proposed class is

'sufficiently cohesive' to warrant 'adjudication' by representation." *Williams-Green v. J.*

*Alexander's Rests., Inc.*, 277 F.R.D. 374, 383 (N.D. Ill. 2011) (citing *Wal-Mart*, 131 S. Ct. at

2566). This inquiry requires courts to identify "the substantive issues that will control the

outcome, assess[] which issues will predominate, and then determine whether the issues are

common to the class." *Id.* (citing *Hyderi v. Wash. Mut. Bank, FA*, 235 F.R.D. 390, 398 (N.D. Ill.

2006)) (internal quotations omitted).

Here, the claims of Plaintiff and the other members of the putative Class all arise from

Defendant's failure to provide server capacity for its SofTest product in a commercially

reasonable manner. As a result, Plaintiff and members of the putative Class were all uniformly

harmed by Defendant's misconduct: they all paid for product that, ultimately, was deficient.

(Compl. ¶¶ 11-13.) As such, the common questions described in Section III.B, *supra*,

predominate over any issues affecting only individual Class members (*e.g.*, the exact payment

each individual Class member made to ExamSoft).

Moreover, the answers to these questions are necessarily subject to common proof,

primarily from information to be found within Defendant's own records. *See Wal-Mart*, 131 S.

Ct. at 2551 (2011) ("What matters to class certification . . . is not the raising of common

'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate

common answers apt to drive the resolution of the litigation."); *Schmidt v. Smith & Wollensky,*

*LLC*, 268 F.R.D. 323, 329 (N.D. Ill. 2010) (holding that the court must determine "whether

plaintiffs can, through individualized cases, offer proof on a class-wide basis."). Defendant failed

to adequately plan for Exam Day and did not operate its SofTest software in a commercially

reasonable manner or as advertised. Moreover, Defendant knew exactly how individuals were

taking the bar using SofTest, the precise submission deadlines for each state, and the "auto-

upload" functionality of its own software—facts that should have allowed ExamSoft to program

its servers and SofTest software to handle the demands of Exam Day. (Compl. ¶ 15.) Thus, the

information necessary to prove Plaintiff's and the Class's claims—*e.g.*, internal communications,

policies, source code, server logs, and test results regarding the operation of ExamSoft's

technical infrastructure—will come from within Defendant's own records.[4]

   For all of these reasons, Rule 23(b)(3)'s predominance requirement is satisfied.

     ii.  <u>The Class Action Mechanism is Superior to Other Available Methods for</u>
        <u>the Litigation of this Matter</u>.

   Finally, Rule 23(b)(3) requires that the class action mechanism be superior to the other

available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P

23(b)(3); *Fletcher*, 245 F.R.D. at 334. The instant class action is superior to other available

methods for the fair and efficient adjudication of Plaintiff's and the Class's claims.

   Absent class treatment in this case, each individual member of the Class would be

---

[4]  Additionally, records of the identity of each member of the putative Class will be within Defendant's possession and control.

required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants. Such a result would be neither efficient nor fair to anyone, including Defendant. Moreover, there is no indication that members of the Class have a strong interest in individual litigation, let alone any incentive to pursue their claims individually, given the small amount of damages likely to be recovered relative to the resources required to prosecute such an action. Furthermore, class certification will promote consistency of rulings and judgments, giving all parties the benefit of finality.

Accordingly, the superiority requirement is also satisfied.

## IV.     CONCLUSION

For the reasons stated above, and which will be borne out by discovery, this case is appropriate for class certification. Accordingly, Plaintiff Phillip Litchfield, individually and on behalf of the proposed Class, respectfully requests that the Court: (1) enter and reserve ruling on his motion for class certification; (2) allow for and schedule discovery to take place on class-wide issues; (3) grant him leave to file an amended motion upon the conclusion of discovery relating to certification issues; (4) grant his motion for class certification after full briefing; and (5) provide all other and further relief that the Court deems reasonable and just.[5]

<div style="margin-left: 50%;">

Respectfully submitted,

**PHILLIP LITCHFIELD**, individually and on behalf of all others similarly situated,

</div>

Dated: August 4, 2014                    By:  /s/ Christopher L. Dore
                                              One of Plaintiff's Attorneys

---

[5]     Plaintiff respectfully reserves the right to amend the definitions of the proposed Class and Subclass at the conclusion of class-wide discovery, subject to Court approval.

15

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Benjamin H. Richman
brichman@edelson.com
Christopher L. Dore
cdore@edelson.com
Eve-Lynn Rapp
erapp@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for the Plaintiff and the Putative Class*

16